***********
The undersigned have reviewed the prior Amended Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Amended Opinion and Award of Deputy Commissioner Holmes and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. That all parties are properly before the Industrial Commission, and that the Industrial Commission has jurisdiction over the parties and the subject matter. *Page 2 
2. That all parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. This case is subject to the North Carolina Worker's Compensation Act.
4. That an employment relationship existed between Plaintiff and Defendant on February 6, 2009.
5. The employee's Average Weekly Wage on February 6, 2009, was $422.00.
6. That Defendant Food Lion, LLC, was a duly-qualified self-insured for work injuries on February 6, 2009.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 65 years old and living in Rocky Point, North Carolina. At the time of the hearing before the Deputy Commissioner, Plaintiff had worked for Food Lion for 5 years.
2. On February 6, 2009, Plaintiff was employed at the Wrightsboro Food Lion store in Wilmington, North Carolina, as a meat cutter trainee. His duties included cutting meat, stocking shelves and food coolers, interacting with customers at the meat counter, cleaning the meat cutting area, and wrapping meat.
3. On February 6, 2009, at approximately 8:15 pm, Plaintiff, working alone, was bringing some boxes of frozen food from the larger produce freezer to the smaller meat market freezer. The market freezer is about 6' x 6' with stainless steel flooring and sharp 90 degree *Page 3 
angled aluminum shelves on all 3 sides except for the door entry wall. The market freezer floor was frozen, slick, and had no grip mats on February 6, 2009.
4. On Plaintiff's third trip into the meat market freezer, he was carrying a box and was just beginning to turn to his right when his feet slipped out from underneath him and he fell to the ground, landing on his rear end. On the way down, Plaintiff struck his left hand and then left elbow on consecutive metal shelves.
5. Plaintiff felt immediate sharp pain in his low back after he fell. Plaintiff also felt pain and a jarring sensation in his neck when he fell. Plaintiff jarred his neck in the fall when his left hand and then left elbow struck consecutive metal shelves as he fell back and downward.
6. Plaintiff was stunned and remained on the ground in pain for about 30 seconds, after which he was able to gather himself up and go to the office in the front of the store. Plaintiff immediately reported his injury to an assistant store manager. Plaintiff had a cut on his left hand from where he struck the metal shelving during the fall. Plaintiff showed this bleeding cut to the assistant manager, who sent him to the ER.
7. At the ER on the evening of February 6, 2009, Plaintiff reported a slip and fall at work and complained of pain in his back and left upper extremity — the one he struck against the shelving. The ER providers noted a lumbar injury and a left hand contusion and abrasion. Plaintiff was treated and released with instructions to seek follow-up care for further pain symptoms.
8. Food Lion then sent Plaintiff to Next Care Urgent Care on February 11, 2009. Only conservative treatment was offered. Plaintiff believed that the Urgent Care providers were not listening to his reports of severe pain. *Page 4 
9. Plaintiff picked up treatment with his own primary care physician, Dr. Alicja Rafalowski, beginning February 24, 2009. Before the work accident, Plaintiff was already seeing Dr. Rafalowski for general care and maintenance of his medications, including pain medications for well-controlled occasional back and neck pain.
10. On February 24, 2009, Plaintiff specifically reported the details of the February 6, 2009, work slip and fall to Dr. Rafalowski. Plaintiff reported severe low back and neck pain and that he could not stand up longer than 10-15 minutes due to pain. According to Dr. Rafalowski this was a new complaint. Plaintiff reported that he really couldn't do anything and that any activity made his low back and neck pain worse. According to Dr. Rafalowski these were also new complaints.
11. Dr. Rafalowski testified that as of February 24, 2009, both Plaintiff's back and neck pain were "much worse" in both severity and frequency than before the work accident, and that both pains were now "constant."
12. Dr. Rafalowski testified that her visual impressions of Plaintiff confirmed his new complaints: he was stooped over and had difficulty just walking. Dr. Rafalowski testified that her physical examination of Plaintiff also confirmed Plaintiff's new complaints of increased low back and neck pain after the work accident. She found Plaintiff's low back to be much more tender and found his straight leg raise testing (an indicator of radicular pain) positive at "hardly 20 degrees," whereas pre-work accident it was 60 degrees. She testified, "[T]his time he was screaming when I lift his leg to 20 degrees." This was true bilaterally. Dr. Rafalowski also found Plaintiff's neck pain and tenderness to be much increased on palpitation as well.
13. Consequently, at this first visit post-work accident, Dr. Rafalowski changed Plaintiff's medication regimen to treat his increased low back and neck pain. Dr. Rafalowski *Page 5 
added a steroid Medrol Dose Pack for pain. She also increased Plaintiff's pre-existing dosage of Methadone from 180 pills/month to 240 pills/month.
14. Plaintiff continued his care for increased low back and neck pain with Dr. Rafalowski. As of his March 17, 2009 visit, Plaintiff's new severe low back and neck pain was only "partially" relieved by the increased and new medication regimen. As to the comparative effectiveness of her pain medication prescriptions pre-and post-work accident, Dr. Rafalowski testified, "I feel the Methadone relieved his pain before, but after this accident, he was on Lorcet and then on Percocet [as well as the increased Methadone], and still his pain was not relieved completely."
15. Due to this increased spinal pain post-work accident, Dr. Rafalowski referred Plaintiff for a lumbar MRI and to a neurosurgeon.
16. Dr. Rafalowski has continued to see Plaintiff on about a monthly basis for treatment of his low back and neck pain. She testified that Plaintiff has not improved, and that the increased spinal pain post-work accident has not subsided or returned to baseline.
17. Dr. Rafalowski testified that Plaintiff has not been able to work at any time since the work accident on February 6, 2009.
18. On April 24, 2009, Plaintiff presented to Dr. George V. Huffmon, III, for the neurosurgical consultation ordered by Dr. Rafalowski. Dr. Huffmon reviewed the March 2009 lumbar MRI films which showed disc disease with stenosis. Dr. Huffmon ordered a cervical CT myelogram, which was performed on May 6, 2009. The CT myelogram showed stenosis at C4-5, 5-6, and 6-7. After diagnostic nerve blocks at C6, Dr. Huffmon recommended an anterior cervical discectomy and fusion (ACDF) at C4-5 and C5-6. Dr. Huffmon performed that surgery on Plaintiff August 19, 2009. *Page 6 
19. Regarding Plaintiff's injuries to his left hand and arm, per Plaintiff's own testimony, the abrasion and bruise on his left hand pretty much healed up after the initial ER visit. Plaintiff's injuries from hitting his left elbow and hand on the shelving were not significant other than the fact that they jarred his neck.
20. Regarding Plaintiff's low back pain, Dr. Huffmon continues to treat Plaintiff. Dr. Huffmon testified that when he first saw Plaintiff, he was complaining of both neck and low back pain, but Dr. Huffmon focused on the neck first because the stenosis on the spinal cord presented the most immediate risk for more harm. Dr. Huffmon testified Plaintiff's low back is presently his main problem. Dr. Huffmon is considering a spinal cord stimulator for Plaintiff's low back pain.
21. Plaintiff had prior treatment for low back pain dating back to a 1992 lumbar laminectomy. Since about 1998, Plaintiff has been treating with his primary care physicians in Wilmington. Since 2005, Dr. Rafalowski has been treating Plaintiff for general medical conditions like high blood pressure, as well as occasional neck and back pain, which was well-controlled with pain medication.
22. Prior to the work accident, Plaintiff never missed work due to back or neck pain and he was able to lift boxes of up to 60-70 pounds, sometimes with help. Prior to the work accident Plaintiff mentioned neck or back pain at work occasionally, but not frequently.
23. Plaintiff has not looked for other work because his doctors have not released him to work and because he believes he cannot do much at all with the significant pain and weakness in his low back and neck.
24. The Full Commission finds by the greater weight of the evidence that Plaintiff's testimony is credible. *Page 7 
25. Plaintiff's actions following the un-witnessed accident confirm his testimony. He immediately reported the accident to store management. He treated immediately at the ER. His reporting to the medical providers as to the mechanism of injury has been consistent with his testimony. Furthermore, the records from the ER on the evening of the accident also document the bruise and abrasion to his left hand sustained when he hit the metal shelving on the way down during the fall.
26. Dr. Rafalowski provided expert medical testimony, and her opinion to a reasonable degree of medical certainty, that Plaintiff's post-accident low back and neck conditions are casually related to the February 6, 2009, work accident, and she provided specific and competent bases for those opinions.
27. Dr. Rafalowski also opined that Plaintiff has been totally disabled from all work since February 6, 2009, and continuing.
28. As Plaintiff's treating primary care physician since 2005, Dr. Rafalowski was best positioned to provide the causation analysis and testimony in this case. Of the providers of record, only Dr. Rafalowski saw and examined Plaintiff before and after the work accident. She saw and examined Plaintiff just thirty (30) days before the work accident and eighteen (18) days after the work accident.
29. Dr. Huffmon testified that it is common for patients with an underlying degenerative process to experience an increase in pain symptoms after a traumatic fall, and that the increased pain symptoms do not necessarily ever return to a baseline. Dr. Huffmon testified that he deferred to the opinions of Dr. Rafalowski:
 ". . . take her words in far superior worth than mine, because, you know, if she knew the patient prior and after, she's going to have a better working knowledge of what that patient's A) pain tolerance *Page 8 
is, B) what helps them, and she would be much more familiar with the patient than I would who does not see the guy until months after the injury; so in my opinion, she could best answer causation question . . . someone who sees the patient before and after I think carries great weight in this — in a case like this."
30. Dr. Huffmon also testified that Plaintiff was totally disabled from all work since February 6, 2009, and continuing.
31. The Full Commission finds by the greater weight of the evidence that Dr. Rafalowski's testimony and opinions are competent in basis and credible.
32. The Full Commission finds by the greater weight of the evidence that Dr. Huffmon's testimony and opinions are competent in basis and credible.
33. As of the date of the hearing before the Deputy Commissioner, Plaintiff remained out of work.
34. The medical evidence of record shows that Plaintiff has not reached Maximum Medical Improvement or been rated for either his neck or low back injuries.
35. Plaintiff needs continued treatment for his neck and low back injuries. His minor left arm injury and left hand bruise/abrasion have healed.
36. The Full Commission finds that the amounts of Plaintiff's prescribed pain medications are of concern, particularly Plaintiff's monthly use of 240 pills of Methadone. The Full Commission finds that an Industrial Commission Nurse should be assigned to facilitate an evaluation of Plaintiff's pain management regimen.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW *Page 9 
1. Plaintiff experienced a compensable injury by accident on February 6, 2009. Said incident materially aggravated his pre-existing low back and neck symptoms. N.C. Gen. Stat. § 97-2(6).
2. As a result of Plaintiff's compensable injury by accident of February 6, 2009, he remains temporarily totally disabled. N.C. Gen. Stat. § 97-29.
3. Given the credible evidence of record, and as a result of his compensable injury by accident, Plaintiff is temporarily totally disabled and is entitled to compensation at the rate of $281.34 per week for the period of time from February 6, 2009, through the present and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowes Prod. Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
4. The North Carolina Workers' Compensation Act gives the Industrial Commission the power to "order such further [medical] treatments as may in the discretion of the Commission be necessary," with the cost to be borne by defendant. Furthermore, the Industrial Commission may "at any time . . . order a change in treatment and designate other treatment suggested by the injured employee. . . ." N.C. Gen. Stat. § 97-25. Given the facts of this case, an Industrial Commission Nurse should be assigned to facilitate an evaluation of Plaintiff's current pain management regimen and pain management needs. N.C. Gen. Stat. § 97-25.
5. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, Plaintiff is entitled to payment for all medical expenses related to Plaintiff's injury by accident of February 6, 2009, which are designed to affect a cure, give relief or lessen the period of Plaintiff's disability, including but not limited to, the surgery performed by Dr. Huffmon. N.C. Gen. Stat. §§ 97-25, 97-25.1.
 *********** *Page 10 
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendant shall pay Plaintiff, subject to the attorney's fee approved below, temporary total disability compensation at a rate of $281.34 per week from February 6, 2009, through the present and continuing until further Order of the Commission. Those payments that have accrued shall be paid in a lump sum, subject to the attorney's fee approved below.
2. Defendant shall pay all of Plaintiff's medical expenses incurred or to be incurred as a result of the compensable injury by accident, subject to the provisions of N.C. Gen. Stat. § 97-25.1.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to Plaintiff in paragraph one (1) above, is hereby approved to be deducted from the lump sums accrued and thereafter, every fourth (4th) payment due Plaintiff shall be paid directly to Plaintiff's attorney.
4. This case is referred to Karen Smith of the North Carolina Industrial Commission Nurse's Section for assignment of an Industrial Commission Nurse to facilitate an evaluation of Plaintiff's current pain management regimen.
5. Defendant shall pay the costs.
This the 7th day of October, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 11 
CONCURRING:
 S/_______________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ PAMELA T. YOUNG CHAIR